## Case No. 2,825.

### CLARK v. ISELIN et al.

[10 Blatchf. 204; 9 N. B. R. 19; 21 Pittsb. Leg. J. 82.] [1]

Circuit Court, S. D. New York. Oct. 2, 1872. [2]

BANKRUPTCY—UNLAWFUL PREFERENCE.

1. The mere giving of security, on a loan of money, is not an illegal preference, under the bankruptcy act.

[Cited in Re Reynolds, Case No. 11,724; Re Strenz, 8 Fed. 313.]

[See note at end of case.]

2. A creditor, holding a warrant to confess judgment, who enters judgment on it, and levies, under such judgment, an execution on the property of his debtor, at a time when the debtor knows, and the creditor has cause to believe, that the debtor is insolvent, obtains an illegal preference, under said act, even though the debtor was not insolvent when the warrant was given.

[See note at end of case.]

3. If a creditor releases the goods of a debtor from the lien of an execution in favor of such creditor, and takes a transfer of other assets from the debtor, in payment of the debt, when the debtor is insolvent, and the creditor has cause to believe so, the preference is an illegal one, under said act.

[See note at end of case.]

In equity. This was a bill in equity filed, in the district court, by the plaintiff [James R. Clark, Jr.], as assignee in bankruptcy of [Henry E. Dibblee, D. P. Bingley, and J. J. Krauss, comprising] the firm of H. E. Dibblee & Co. against [Adrian Iselin and Isaac Iselin] the members of the firm of A. Iselin & Co. The bankrupts were adjudged such,

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. 21 Pittsb. Leg. J. 82, contains only a partial report.]

[2] [Reversed by the supreme court in Clark v. Iselin, 21 Wall. (88 U. S.) 360.]

in involuntary proceedings, on the 2d of June, 1869, the petition having been filed May 3d, 1869. [See Case No. 3,884.] The bill set forth, that, on the 25th of February, 1869, Dibblee, one of the bankrupts, without the knowledge of his other two copartners, Bingley and Krauss, gave to Iselin & Co. a confession of judgment in his own name, and in the name of the firm, for $54,100, with authority in it to enter judgment for that sum against the members of the firm, the consideration stated in the confession being securities amounting to the cash value of $54,-100, loaned and advanced by Iselin & Co. to Dibblee & Co., some on the 20th of February, 1869, some on the 23d of February, 1869, and some on the 24th of February, 1869; that, on the 30th of April, 1869, Iselin & Co. entered a judgment, in their favor, against the three bankrupts, in the supreme court of New York, on such confession, for $54,100, and docketed the same, and issued an execution thereon. in which, on the same day, a levy was made on the stock in trade and merchandise of the bankrupts; that the securities mentioned in the confession of judgment were hypothecated by Dibblee, in February, 1869, to various banks in New York, as collateral security for loans made by said banks to the bankrupts. on their notes for $46,000; that, afterwards, Iselin & Co. paid the loans to the banks and received from them the securities; that, on the 1st of May, 1869, the bankrupts gave to Iselin & Co. a bill of sale of bills receivable and accounts amounting, on their face, to $47,839.-52, and paid to Iselin & Co. $1,900 in cash, and Iselin & Co. accepted the same, and the securities received from said banks, which they had taken subject to their lien thereon for the money they had paid to said banks, in satisfaction of said judgment and execution, and the same were thereupon cancelled and satisfied of record; that the advance of the securities hypothecated to said banks was made by Iselin & Co. to enable the bankrupts to borrow money and apply it, or to apply other money, and which money was applied, to pay other debts due by the bankrupts to Iselin & Co.; that, in March and April, 1869, the bankrupts transferred to Iselin & Co. upwards of $61,000 of their assets, as collateral security for $61,000 of indebtedness to Iselin & Co., part of which Iselin & Co. had collected at the time the petition in bankruptcy was filed: that, between March 22d, 1869, and May 1st, 1869, the bankrupts paid to Iselin & Co. $20,108.52, in payment of $20,000 of call loans made by Iselin & Co. to the bankrupts on March 5th, 6th and 8th, 1869; that, on or about April 8th, 1869, the bankrupts paid to Iselin & Co. $7,944.88, for interest on prior indebtedness; that these transactions took place with a view, on the part of the bankrupts, to give a preference to Iselin & Co., as creditors of the bankrupts, and when the bankrupts were insolvent, and in fraud of the bankruptcy act; and that Iselin & Co. had reasonable cause to believe the bankrupts to be insolvent, and that a fraud on said act was intended by such dispositions of property. The bill prayed, that the title of Iselin & Co. to the securities and moneys so paid and assigned to them be decreed to be fraudulent and void as against the plaintiff, and that Iselin & Co. be decreed to account for, and pay to the plaintiff, the value of said securities, (less the amount for which the same were hypothecated to said banks), and all payments and transfers so made by the bankrupts to Iselin & Co., and the value of the assets so assigned in March and April, 1869, and by the bill of sale of May 1st, 1869. The district court decreed that the title of Iselin & Co. to the property assigned by the bill of sale of May 1st, 1869, and to the $1,900, and to the securities received from the banks, (subject to the amount paid by Iselin & Co. to redeem the same), was void, under the bankruptcy act, as against the plaintiff, and that Iselin & Co. should be precluded from proving in bankruptcy their judgment for $54,-100, or debt for which it was recovered, and should account for the said property and money and securities. The final decree was for $61,988.14. In other respects the prayer of the bill was denied. [Case unreported.] Both parties appealed to this court.

[For dismissal of a prior appeal from the interlocutory decree, see Case No. 2,824, next preceding.]

Charles H. Smith, for plaintiff.
Stephen P. Nash and Henry W. Clark, for defendants.

WOODRUFF, Circuit Judge. The uncharitable prejudice which regards every one who does not pay his debts as a knave, and esteems every one who has befriended him a conspirator to defraud others, may, perhaps, find reasons for most unjust imputations upon the defendants in this cause. They are, in my opinion, wholly unwarranted by the proofs. On the contrary, looking to the purpose and intent of the actors in the transactions in question, the proofs fail to show any actual bad faith, or want of the highest integrity, in either of them.

The assignment made to Iselin & Co., May 1st, 1869, was, I think, a violation of the provisions of the bankrupt law, in the sense, that, by that law, it was invalid; but, even this was, I think, made under a real misapprehension, in the mistaken belief that it was proper, and in the discharge of a valid lien, which it was for the interest of the insolvent firm and its creditors to remove from their stock of goods then in the possession of the sheriff.

I think there was nothing in the transactions prior to that date, which was liable to any imputation, either as fraudulent in fact, or as contravening the provisions of

the bankrupt law. Lending to the firm of H. E. Dibblee & Co. $54,100, and taking security therefor, whether in the form of a confession of judgment, or a pledge of promissory notes, or a bond and mortgage of real estate, was not the taking of a preference, in any sense of that term, used in the bankrupt law. Had the firm, on the 25th of February, 1869, applied to an insurance company, or an individual having funds, for a loan upon bond and mortgage, and, receiving the loan, had given security, no one could say that an illegal preference had been given. In that case, and equally in the case of the loan made by Iselin & Co. here, the firm received the whole amount for which the lenders took security. The estate of the firm was enhanced for the payment of debts, or for the purposes of business, to the precise extent which it was burthened by the giving of the security. The balance sheet remained the same. If Iselin & Co. had been content to rest on the security they then had, I think their position would have been safe from impeachment on any ground.

Whether they could, after knowledge or reason to believe that H. E. Dibblee & Co. were insolvent, proceed, (on the authority given on the 25th of February,) to enter up judgment, and levy and collect the amount by execution, is, however, a different question. They would, at least, have been permitted to prove the debt against the estate of the bankrupts, even if the proceedings in bankruptcy had intervened, to prevent their having the benefit of the authority to enter up a judgment. Prior to the entry of judgment, Iselin & Co. had in their hands an instrument authorizing the entry of a judgment, but had, in fact, no lien upon the property of the firm. This instrument was called a security, but it was, in truth, only a means or instrument placed in their control, by which security and payment might be effected. It contemplated the possible necessity of being made effective, but it was, in itself, only inchoate, and, so long as it remained in the hands of Iselin & Co., it had no legal operation, and vested in them no right of property in any part of the estate of the debtors, either absolute, qualified, or contingent. In this condition of Iselin & Co. and Dibblee & Co., the proof shows, I think, that both Dibblee and Iselin became satisfied that the firm of the former was insolvent, and then attempted to make the instrument previously executed effectual.

It may be conceded, that it would have been a violation of good faith for Dibblee to do anything to prevent Iselin & Co. from obtaining full security by means of a judgment. It may even be conceded, that, as between Iselin & Co. and Dibblee & Co., the former had acquired an unquestionable right, both legal and equitable, to enter up judgment and enforce it. But, this is not the test of their right as against creditors, when Dibblee & Co. were adjudged bankrupt. Iselin & Co. had obtained no actual preference, when the affairs of Dibblee & Co. reached such a condition, that Dibblee must have known, and Iselin had cause to believe, and, I think, did believe, that the debtors were insolvent, and entered up the judgment, for obtaining the actual security and preference which it was in his power to effect through the instrument theretofore executed. In this point, the case does not differ from an example readily suggested. Suppose Iselin & Co. had made a loan, upon a promise by Dibblee & Co. in proper legal form, to give a bond and mortgage as security, whenever required. It would be bad faith in Dibblee thereafter to refuse to give the bond and mortgage, or to do anything which deprived him of the power to give such bond and mortgage, as a valid security; and yet, if, before it was given, Dibblee became or was insolvent, and Iselin became aware of it, the performance of the promise would have been, in fact, a giving and receiving a preference, and not less so because of the previous promise. So, of a promise to give a judgment; and so, of a writing actually delivered to Iselin & Co., but not made effective. As against creditors, the right to carry the promise, or the intention, into effect, is defeated. As against them, the actual gaining of the preference is forbidden. In the case of the promised bond and mortgage, I think this would not be questioned; and I perceive no distinction between the cases. As against the debtors, a court of equity would enforce their duty to make the contemplated security; and, in the absence of any conflicting rule, that court would consider that done which ought to be done, and so give effect to the intended security, as of the time when the loan was made. But, when the provisions of an express statute have intervened, and the exigency has arisen in which the statute declares the right of creditors to an equal distribution of the property, I think the creditor who has, in the mean time, relied upon an executory promise, or upon his possession of what is practically a mere authority to acquire and enforce a lien, must rest where he finds himself. To then give or take the preference is prohibited.

This is not all. On the 1st of May, after the insolvency of the firm was clear, the debtors made an actual transfer of assets, for the payment of the debt to Iselin & Co., and consented that the latter obtain further payment, by redeeming other assets from banks to which they were pledged for less than their value. This was a clear preference of Iselin & Co., whatever motive, in respect to liberating the stock of goods from the levy of the execution, may have prompted it. Freedom from the lien of the execution was an inducement to this

transfer, but did not justify it. The creditors of the bankrupts had a right to have the estate in the condition in which it was when Dibblee & Co. and Iselin & Co. became conscious of the insolvency, and of the effect of paying Iselin & Co. their debt.

These views result in an affirmance of the decree made below, so far as the surplus of the assets redeemed from banks, the cash payment of $1,900, and the transfer of the notes and accounts mentioned in the assignment of the 1st of May, 1869, were declared void as against the complainant, and so far, also, as it excludes Iselin & Co. from proving the debt thereby attempted to be paid.

As to the sum of $2,229.08, also decreed to be paid to the assignee, I am not able to discover, from the proofs, nor from the stipulation made by the parties, when this surplus, (over and above the amount due to Iselin & Co. upon their previous advances,) accrued. If they had collected it, and held it, at or before the petition in bankruptcy against Dibblee & Co. was filed, then they are entitled to retain it, and to apply it on the debt which was secured, or attempted to be secured, by the judgment. That debt was, and still is, a valid debt against the bankrupts, notwithstanding the creditors are not permitted to prove it against the estate in the hands of the assignee; and, if the moneys referred to are collected, so as to constitute a debt from Iselin & Co. to Dibblee & Co., by overpayment or collection on the securities for the other advances, then their claim against the bankrupts, for which the judgment was confessed, was a valid set off thereto, and Iselin & Co. should not be required to pay over that surplus to the assignee. The bankrupt law allows and requires such set off. Any collections in excess of the advances for which they were specifically pledged, made after the filing of the said petition, were collections for the account of the assignee, and, as to them, no such right of set off exists. As this point was not urged by counsel as an impeachment of the decree, I conclude that the sum of $2,229.08, in question, was so collected. If so, the decree must be affirmed; and, as both parties have appealed, neither should be allowed costs, as against the other.

[NOTE. Both parties appealed to the supreme court, where the decree of the circuit court was reversed,—the majority of the court holding, per Mr. Justice Strong, that the return of the notes held by defendants as collateral to Dibblee & Co. was merely to facilitate the collection thereof, and in no degree affected defendants' title thereto; that the withdrawal of the collateral for the first three notes, and the contemporaneous pledging of others in their stead, amounted to a mere exchange of securities; that the circumstances of the transactions between defendants and the bankrupts sufficiently showed that defendants did not suspect the insolvency of Dibblee & Co. at the time of the transactions in question, nor was there any evidence that during this period the bankrupts contemplated insolvency. The court further held that the confession of judgment was lawfully made, and that the subsequent entry of the judgment, the issue of the execution, and the levy thereunder, were not fraudulent, nor a procurement by the bankrupts of a seizure of their property with a view on their part to give a preference under the thirty-fifth section of the bankrupt act. Clark v. Iselin, 21 Wall. (88 U. S.) 360.]